1

2

3                                                          O

4

5

6

7

8                UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10

11  RENNIE COWAN, an          )   Case No. EDCV 08-917-VAP
    individual,               )   (AGRx)
12                            )
                Plaintiff,    )
13                            )   **ORDER (1) DISMISSING CLAIMS**
        v.                    )   **ARISING UNDER AMERICANS WITH**
14                            )   **DISABILITIES ACT AND TITLE**
    WILLIAM MORRIS AGENCY,    )   **VII WITH LEAVE TO AMEND; (2)**
15  LLC; DAVID KEKST, STEVE   )   **DISMISSING ALL OTHER CLAIMS**
    COOLEY (District          )   **WITHOUT LEAVE TO AMEND**
16  Attorney); MARY HARDING;  )
    MICHELLE LaMAR, ERIN      )
17  SMITH; JANE JOHNSON; KIM  )
    KOSER; JASON HATCHER and  )
18  JIM WIATT,                )
                              )
19              Defendants.   )
    _____)
20

21                    **I. BACKGROUND**

22  **A.   Factual Allegations**

23      On March 12, 2007, Plaintiff Rennie Cowan

24  ("Plaintiff") was discharged from her employment at

25  Defendant William Morris Agency LLC ("William Morris").

26  (Compl. at 1.)  Plaintiff alleges that her termination

27  was in retaliation to discrimination claims that she

28  filed with the Human Resources Department on September

26, 2006 and with the Equal Employment Opportunity
Commission ("EEOC") on December 3, 2006.  (<u>Id</u>. at 2-3,
Ex. G.)  Plaintiff further alleges that she was
discharged because of her gender and her race.  (<u>Id</u>. at
3.)  Plaintiff claims that Defendants Kim Koser and Jason
Hatcher, employees in the William Morris Human Resources
Department, did nothing to help her after her September
26 complaint.  (<u>Id</u>. at 4.)

Plaintiff also filed a Worker's Compensation claim
against William Morris in October, 2006.  (<u>Id</u>. at 4).
Plaintiff alleges that she experienced severe abdominal
pain, a hiatal hernia, and major depression after having
her workstation moved to the basement by William Morris
Senior Vice President of Administration David Kekst,
which she claims was done to harass her.  (<u>Id</u> at 2, 13.)
Having such disabilities, Plaintiff further claims that
William Morris' termination of her employment also
violates the Americans with Disabilities Act ("ADA").
(<u>Id</u> at 6.)

Plaintiff alleges that Defendants Los Angeles
District Attorney Steve Cooley and William Morris in-
house counsel Mary Harding, both of whom are Jewish,
retaliated against her, a Christian, by filing criminal
charges against her.  (<u>Id</u>. at 5.)  Plaintiff also claims
Defendant Attorneys Erin Smith and Michelle LaMar

1  committed legal malpractice by violating the ABA's
2  attorney-advocate witness Model Rule by "posing" as
3  witnesses against Plaintiff in her discrimination claims.
4  (Id. at 8.)  Plaintiff further alleges that Defendant
5  Judge Jane Johnson improperly deemed her as a "vexatious
6  litigant," without an opportunity to be heard.  (Id. at
7  9-10.)

8

9      Finally, Plaintiff seeks to protect her rights to her
10 intellectual property, including manuscripts, which she
11 claims she has been unable to copyright because
12 Defendants have "blacklisted" her.  (Id. at 17.)

13

14 **B.   Procedural History**

15     Plaintiff filed a Complaint in pro se in this Court
16 on August 13, 2008, and is proceeding in forma pauperis
17 against Defendants William Morris, David Kekst, Steve
18 Cooley, Mary Harding, Michelle LaMar, Erin Smtih, Jane
19 Johnson, Kim Koser, Jason Hatcher, and Jim Wiatt
20 ("Defendants").

21

22     This case was referred to United States Magistrate
23 Judge Robert Block pursuant to General Order 07-02 on
24 September 4, 2008.  That court issued an order requiring
25 plaintiff to show cause why, for various reasons, her
26 federal civil rights claims should not be dismissed
27 without leave to amend.  Plaintiff failed to file a
28

1  response to the Order to Show Cause by the deadline set
2  by that court.

3
4                      **II. LEGAL STANDARD**

5      Under 28 U.S.C. § 1915(e)(2), the court may dismiss a
6  case at any time where a plaintiff is proceeding in forma
7  pauperis if that plaintiff (1) "fails to state a claim on
8  which relief may be granted;" or (2) "seeks monetary
9  relief against a defendant who is immune from such
10 relief."  As a general matter, the Federal Rules require
11 only that a plaintiff provide "'a short and plain
12 statement of the claim' that will give the defendant fair
13 notice of what the plaintiff's claim is and the grounds
14 upon which it rests."  <u>Bell Atlantic Corp. v. Twombly</u>,
15 550 U.S. 544, 127 S. Ct. 1955, 1964 (2007) (quoting Fed.
16 R. Civ. P. 8(a)(2)).  In addition, the Court must accept
17 all material allegations in the complaint -- as well as
18 any reasonable inferences to be drawn from them -- as
19 true.  <u>See</u> <u>Doe v. United States</u>, 419 F.3d 1058, 1062 (9th
20 Cir. 2005); <u>ARC Ecology v. U.S. Dep't of Air Force</u>, 411
21 F.3d 1092, 1096 (9th Cir. 2005).

22
23     The allegations must be plausible on the face of the
24 complaint.  <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. __, 129 S.
25 Ct. 1937, 1949 (2009).  "The plausibility standard is not
26 akin to a 'probability requirement,' but it asks for more
27 than a sheer possibility that a defendant has acted
28

                                4

unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'"  <u>Id.</u> (citations and internal quotations omitted).

Although the scope of review is limited to the contents of the complaint, the Court may also consider exhibits submitted with the complaint, <u>Hal Roach Studios, Inc. v. Richard Feiner & Co.</u>, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990), and "take judicial notice of matters of public record outside the pleadings," <u>Mir v. Little Co. of Mary Hosp.</u>, 844 F.2d 646, 649 (9th Cir. 1988).

**Granting Leave to Amend**

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires."  The Ninth Circuit has held that "'[t]his policy is to be applied with extreme liberality.'" <u>Eminence Capital, L.L.C. v. Aspeon, Inc.</u>, 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting <u>Owens v. Kaiser Found. Health Plan, Inc.</u>, 244 F.3d 708, 712 (9th Cir. 2001)).  A motion for leave to amend should be denied only on a showing of bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and whether the plaintiff has previously amended his or her complaint.  <u>Nunes v. Ashcroft</u>, 375 F.3d 805, 808 (9th

Cir. 2004).  The Ninth Circuit has further held that "it is the consideration of prejudice to the opposing party that carries the greatest weight."  <u>Eminence Capital</u>, 316 F.3d at 1052.

## III. DISCUSSION

**A.  Immunity**

Los Angeles Superior Court Judge Jane Johnson is dismissed from this action on the basis of judicial immunity.  See <u>Stump v. Sparkman</u>, 435 U.S. 349, 355-56, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978); <u>Bradley v. Fisher</u>, 80 U.S. 335, 354, 20 L. Ed. 646 (1871) (holding that judges of courts of record of superior or general jurisdiction are not liable in civil actions for their judicial acts, even when such acts are in excess of their jurisdiction and are alleged to have been done maliciously or corruptly); <u>Schucker v. Rockwood</u>, 846 F.2d 1202, 1204 (9th Cir.) (holding that such immunity applies "however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff") <u>cert. denied</u>, 488 U.S. 995 (1988); <u>Ashelman v. Pope</u>, 793 F.2d 1072, 1075 (9th Cir. 1986).

Los Angeles District Attorney Steve Cooley is dismissed from this action on the basis of prosecutorial immunity.  See <u>Imbler v. Pachtman</u>, 424 U.S. 409, 427, 430-31, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976) (holding that prosecutorial immunity applies even if it "does

1  leave the genuinely wronged defendant without civil
2  redress against a prosecutor whose malicious or dishonest
3  action deprives him of liberty" and that the immunity
4  extends to all activities "intimately associated with the
5  judicial phase of the criminal process," such as
6  initiating a prosecution and presenting the state's
7  case); Ashelman, 793 F.2d at 1075.  The doctrine of
8  prosecutorial immunity also bars Plaintiff's claim that
9  District Attorney Cooley instituted the criminal action
10 against Plaintiff in retaliation for Plaintiff's exercise
11 of her First Amendment right to speak out against William
12 Morris.  See Hartman v. Moore, 547 U.S. 250, 262, 126 S.
13 Ct. 1685, 164 L. Ed 2d 441 (2006); see also Fockaert v.
14 County of Humboldt, 1999 WL 30537, at *6 (N.D. Cal. Jan.
15 15, 1999) (finding prosecutor entitled to immunity where
16 plaintiff alleging violation of his First Amendment right
17 to free speech).

18
19 **B.   Legal Malpractice Claims**
20      To the extent that plaintiff is purporting to state a
21 federal civil rights claim pursuant to 42 U.S.C. § 1983
22 against any of the individual defendants based on
23 allegedly perjurious testimony given by them in
24 connection with court proceedings, Plaintiff's claim is
25 barred by the doctrine of witness immunity.  See Briscoe
26 v. LaHue, 460 U.S. 325, 345-46, 103 S. Ct. 1108, 75 L.
27 Ed. 2d 96 (1983); Burns v. County of King, 883 F.2d 819,
28

1    822 (9th Cir. 1989) (holding that witnesses also are
2    entitled to absolute immunity for statements made in an
3    affidavit to a court); Holt v. Castaneda, 832 F.2d 123,
4    127 (9th Cir. 1987), cert. denied, 485 U.S. 979 (1988);
5    see also Franklin v. Terr, 201 F.3d 1098, 1101-02 (9th
6    Cir. 2000) (holding that the absolute witness immunity
7    doctrine also applies to conspiracy to provide perjured
8    testimony).
9
10        Further, legal malpractice is a state law claim, for
11   which "there exists no independent basis of federal
12   jurisdiction."  See Aragon v. Federated Dept. Stores,
13   Inc., 750 F.2d 1447, 1457-58 (9th Cir. 1985).
14
15   **C.   Federal Civil Rights Claims Under 42 U.S.C § 1983**
16        To the extent that plaintiff is purporting to state
17   any federal civil rights claims pursuant to § 1983
18   against any of the private party defendants, such claims
19   are dismissed without leave to amend on the ground that
20   none of those defendants qualifies as a state actor for
21   purposes of § 1983's "color of law" requirement.  See
22   American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40,
23   49, 119 S. Ct. 977, 143 L. Ed. 2d 130 (1999) (holding
24   that § 1983 "excludes from its reach merely private
25   conduct, no matter how discriminatory or wrong"
26   [citations and internal quotations omitted]); Rendell-
27   Baker v. Kohn, 457 U.S. 830, 838, 102 S. Ct. 2764, 73 L.
28

8

1  Ed. 2d 418 (1982) (noting that "[t]he ultimate issue in
2  determining whether a person is subject to suit under §
3  1983 is the same question posed in cases arising under
4  the Fourteenth Amendment: is the alleged infringement of
5  federal rights fairly attributable to the
6  [government]?"); <u>see also</u> <u>Huffman v. County of Los</u>
7  <u>Angeles</u>, 147 F.3d 1054, 1057 (9th Cir. 1998) (holding
8  that a defendant must have acted "under color of law" to
9  be held liable under § 1983), <u>cert. denied</u>, 526 U.S. 1038
10 (1999); <u>Goehring v. Wright</u>, 858 F. Supp. 989, 998 (N.D.
11 Cal. 1994) (holding that private citizens who complained
12 to local authorities about neighbor's alleged activities
13 which gave rise to neighbor's arrest and prosecution were
14 not "state actors" for purposes of § 1983 action).

15

16 **D. Vexatious Litigant Status**

17       To the extent that plaintiff is purporting to state
18 a claim directed to the state judicial proceeding
19 resulting in the judgment declaring her to be a vexatious
20 litigant and purporting to seek relief from that
21 judgment, such claim is dismissed without leave to amend
22 pursuant to the <u>Rooker-Feldman</u> doctrine, which provides
23 that federal district courts may not exercise appellate
24 jurisdiction over state court decisions even when the
25 challenge to the state court decision involves federal
26 constitutional issues.  See <u>District of Columbia Court of</u>
27 <u>Appeals v. Feldman</u>, 460 U.S. 462, 482-86, 103 S. Ct.

28

1303, 75 L. Ed. 2d 206 (1983); <u>Rooker v. Fidelity Trust</u>
<u>Co.</u>, 263 U.S. 413, 415-16, 44 S. Ct. 149, 68 L. Ed. 362
(1923); <u>Noel v. Hall</u>, 341 F.3d 1148, 1163-64 (9th Cir.
2003) (holding that <u>Rooker-Feldman</u> doctrine applies "[i]f
a federal plaintiff asserts as a legal wrong an allegedly
erroneous decision by a state court, and seeks relief
from a state court judgment based on that decision");
<u>Dubinka v. Judges of the Superior Court</u>, 23 F.3d 218, 221
(9th Cir. 1994) (holding that <u>Rooker-Feldman</u> doctrine
applies even when the challenge to the state court
decision involves federal constitutional issues);
<u>Worldwide Church of God v. McNair</u>, 805 F.2d 888, 890 (9th
Cir. 1986) (holding that federal court has obligation to
raise issue of <u>Rooker-Feldman</u> doctrine sua sponte, since
the doctrine proscribes federal court jurisdiction over
collateral challenges to state court judgments and cannot
be waived).

**E.   Claim Under the Americans with Disabilities Act**

Plaintiff alleges she was subjected to disparate
treatment due to a disability which she developed,
possibly referring to severe abdominal pain and major
depression.  Under the ADA, no "entity shall discriminate
against a qualified individual with a disability because
of the disability of such individual."  42 U.S.C. §
12112(a).  "Disability" is defined as a "physical or
mental impairment that substantially limits one or more

major life activities of such individual."  42 U.S.C. §
12102(1)(A).  "Major life activities include, but are not
limited to, caring for oneself, performing manual tasks,
seeing, hearing, eating, sleeping, walking, standing,
lifting, bending, speaking, breathing, learning, reading,
concentrating, thinking, communicating, and working."  42
U.S.C. § 12102(2)(A).

Plaintiff here fails to allege exactly what
disability she suffers from and also fails to state
clearly what discriminatory actions were taken against
her.  To the extent that her disability consists of
severe abdominal pain and depression, Plaintiff has
failed to show how these impair one of her major life
activities.  Therefore, Plaintiff's claim under the ADA
is dismissed with leave to amend, so that Plaintiff can
more clearly explain her disability, what actions have
been taken against her, and which actors committed those
actions.

**F.   Retaliation Claim Under Title VII of the Federal
      Civil Rights Act of 1964**

Plaintiff alleges that her discharge was a form of
retaliation against her for filing discrimination
complaints with both the Human Resources Department of
William Morris and the EEOC.  To make out a prima facie

case of retaliation, a plaintiff must demonstrate (1) she
engaged in protected activity; (2) defendant subjected
her to an adverse employment decision; (3) the activity
and the decision were causally linked.  <u>Bergene v. Salt
River Project Agricultural Improvement and Power
District</u>, 272 F.3d 1136, 1141 (9th Cir. 2001).  An
example of a protected activity is "opposing an unlawful
employment practice."  <u>E.E.O.C. v. Luce, Forward,
Hamilton, & Scripps</u>, 303 F.3d 994, 1005 (9th Cir. 2002).
An adverse employment action is one which "a reasonable
employee would have found . . . materially adverse, which
in this context means it well might have dissuaded a
reasonable worker from making or supporting a charge of
discrimination."  <u>Burlington Northern and Santa Fe
Railway Co. v. White</u>, 548 U.S. 53, 68-69 (2006) (internal
citations omitted).

     Plaintiff has satisfied the first element in showing
she engaged in protected activity by filing a complaint
with the EEOC.  Plaintiff has also satisfied the second
element, having experienced an adverse employment
decision by being terminated.  Plaintiff's claim fails
because it lacks explanation that these two circumstances
are causally linked.

     The discharge occurred more than five months after
Plaintiff filed the complaint with the Human Resources

1  Department and more than four months after Plaintiff
2  filed the complaint with the EEOC.  Further, Plaintiff
3  had been convicted of crimes prior to her discharge.
4  Plaintiff fails to make out a prima facie case of
5  retaliation because she does not specify the causal
6  relationship between her filing complaints with Human
7  Resources and the EEOC and her termination.  Therefore,
8  Plaintiff's claims under Title VII are dismissed with
9  leave to amend, so that Plaintiff can properly allege the
10 causal connection between her termination and her filing
11 of the complaints with Human Resources and the EEOC.
12
13 **G.   Intellectual Property Claim**
14      To the extent that Plaintiff alleges an infringement
15 of her intellectual property, Plaintiff fails to state
16 any cognizable claim.  Plaintiff merely expresses a
17 suspicion that she has been "blacklisted," which has
18 caused the U.S. Copyright Office to not respond to her
19 inquiries.  Plaintiff further fails to allege who she is
20 seeking recovery from under this claim.
21
22                    **IV. CONCLUSION**
23      For the foregoing reasons, the Court dismisses
24 without leave to amend Plaintiff's Complaint as to all
25 claims except the claims arising under Title VII and the
26 ADA.  The Court dismisses with leave to amend Plaintiff's
27 claims under Title VII and the ADA.  Plaintiff may file
28

1    an amended complaint by August 28, 2009.  If Plaintiff
2    fails to file an amended complaint by that date, the case
3    will be dismissed.
4
5
6
7    Dated:  August 18, 2009    _____
8                                    VIRGINIA A. PHILLIPS
                                   United States District Judge
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28